

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable W.K. McClain
Criminal District Attorney
Georgetown, Texas

Dear Sir:

Opinion No. O-1418

Re: Can an independent school district
take out an insurance policy cover-
ing bodily injury and bus damage
in connection with its operation
of school busses for the transpor-
tation of children? Where such a
policy has been taken out may an
injured student recover upon such
a policy?

We are in receipt of your letter of September 1, 1939, where-
in you seek our opinion on the following questions:

"In view of the fact that a school district is not
liable for personal injury from a school bus accident,
is a school board misusing tax money to take out per-
sonal injury insurance? (Such as represented by the
enclosed policy.)

"In case of accident can the injured party recover
on the contract in view of the rider attached to the
insurance policy enclosed herewith?"

The policy which you enclose obligates the insurance company
to "pay on behalf of the insured all sums which the insured shall
become obligated to pay by reason of the liability imposed upon him
by law" for damages to person or property through the operation of
school busses. Uniform Rider No. 101, which is attached to the
policy, contains, among other things, the following provisions:

"It is agreed that in the event of claim arising
under coverages of bodily injury liability and prop-
erty damage liability afforded under this policy, the
company will not interpose the defense that the in-
sured is engaged in the performance of a governmental
function, except in those cases where its action will
involve the insured in a possible loss not within the
protection of this insurance."

Subsection (2) of Paragraph II provides that the insurance company shall defend in the name of the insured and on his behalf any suit alleging injury or destruction and seeking damages which are covered by the policy. Under "Special Conditions", the policy provides that "no action shall lie against the Company unless, as a condition precedent thereto, the insured shall have fully complied with all the conditions hereof, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company..."

Article 2687a, Vernon's Annotated Texas Statutes, reads in part as follows:

"The trustees of any school district, common or independent, making provision for the transportation of pupils to and from school, shall for such purpose employ or contract with a responsible person or firm ........ The drivers of all school transportation vehicles shall be required to give bond for such a-mount as the board of trustees of the district may prescribe, not less than two thousand dollars ($2,000), payable to the district, and conditioned upon the faithful and careful discharge of their duties for the protection of pupils under their charge and faithful performance of the contract with said school board. . . ."

Another Article which should be construed in connection with the question presented in your letter is Article 2827, Vernon's Annotated Texas Statute, which provides that local funds of independent school districts may be expended "for the payment of insurance premiums". We are unable to find any other statute which might be construed as authorizing a school board to take out and pay for such an insurance policy as is described in your letter.

Your first question, therefore, may be divided into two parts, as follows, to-wit: (1) Does said Article 2827 provide express authority for the expenditure of local school funds in payment of insurance premiums on the type of policy described in your letter? (2) If not, is such authority implied from the express statutory authority to operate school busses?

In a letter opinion to Mr. W.E. James, First Assistant State Superintendent of Public Instruction, under date of September 16, 1936, this department held that there was neither expressed nor implied authority to expend public school funds for this purpose. In another letter opinion by this department addressed to the same person, under date of August 17, 1936, it was pointed out that the provision in the statutes requiring a bond of bus drivers for the faithful performance of their duties provided an adequate means for

compensating such school children for damages resulting from injuries through the negligent operation of such busses, and such means was exclusive, and that it cannot be assumed that there is an implied power to provide against such contingencies in a different manner.  A careful study of the questions presented leads us to the same conclusion.

It is now well settled that a school district is not liable for the torts of its agents or employees which are committed in the performance of a governmental function.  The operation of a school bus for the transportation of pupils to and from school is, in our opinion, a governmental function.  It is apparent, therefore, that the protection afforded under the policy enclosed in your letter is not for the direct benefit of the school district but inures to the benefit of three classes of people, to-wit:  (1) The driver, whose liability for damages resulting from his negligence in the operation of the bus is protected by the policy.  (2) The school children who ride on the bus.  (3)  Any other person who may receive an injury to his person or damage to his property through negligent operation of the bus.

It is our opinion that insurance policies for which premiums are authorized to be paid by Article 2827 out of local school funds are such policies as protect the district, itself, from pecuniary liability or loss.  Ordinarily it is the purpose of insurance policies to protect the insured from liability or loss and not to provide a means of compensating the third parties for injuries which they may receive at the hands of the insured.  We cannot believe that the Legislature intended that the funds of the school districts should be expended to pay insurance premiums for the protection of third parties against damages for which the school district itself could not be held liable.  In our opinion the authority so to expend public funds is not found in said Article 2827, nor do we believe it to be implied from the power to operate school busses and employ school bus drivers found in Article 2687a.  Implied powers are founded upon reasonable necessity.  Such necessity springs from the fact that the expressed powers cannot be fully executed or enjoyed unless supplemented by such implied powers.  In this case the district receives the full benefit of the expressed statutory authority to operate school busses without the necessity of taking out this type of insurance.

Doubtless the Legislature could authorize school districts to expend local school funds for insurance premiums to protect its school children against injury, and its employees against both liability and injury, from the operation of its school busses.  We do not believe that the Legislature has as yet exercised its authority  to confer upon school districts this authority.

We are unable to agree with the Tennessee Supreme Court in the cases of Marion County vs. Cantrell, 61 S.W. (2d) 477, and

Rogers vs. Butler, 92 S.W. (2d) 415, wherein the court holds that under a similar statute authorizing school districts to require a bond of bus drivers, the district may elect to take out a public liability and property damage insurance policy in lieu thereof. The driver of a school bus owes to the children whom he transports the highest degree of care consistent with the practical operation of the bus.  Phillips vs. Hardgrove, 296 Pac. 559; Sheffield vs. Lovering, 180 S.E. 523.  The drivers' duty extends beyond the actual operation of the school bus to such matters as seeing that children alighting from the bus do not walk into the path of another and oncoming motor vehicle.  Robinson vs. Draper, 106 S.W. (2d) 825, 127 S.W. (2d) 181 (comm. App.).  The statutory bond required of bus drivers doubtless covers broader liabilities and duties of the driver than are covered by the policy which you enclose in your letter.  On the other hand, the policy doubtless covers liabilities of the bus driver to third parties which would not be covered by the statutory bond.  Such a policy, therefore, is not a proper substitute for the required bond, and the school trustees should in every case, require bus drivers to furnish adequate bonds.

For the reasons stated, we answer your first question in the affirmative.  It, therefore, becomes unnecessary to answer your second question.

We enclose the insurance policy herein.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Victor W. Bouldin
    Victor W. Bouldin
    Assistant

VWB:FG:wc

APPROVED SEP 25, 1939
s/ W.F. Moore
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman